# Cases

# THIRD DEPARTMENT

AT

# GENERAL TERM,

## November, 1887.

REBECCA SUTHERLAND, as Administratrix, etc., of MARK SUTHERLAND, Deceased, Appellant, v. THE TROY AND BOSTON RAILROAD COMPANY, Respondent.

*Action against a railroad by an employee, for negligence — when the question as to whether the defendant had taken all proper steps to avoid the accident should be submitted to the jury.*

Upon the trial of this action, brought to recover damages for the alleged negligent killing of the plaintiff's intestate by the defendant, it appeared that on the morning of August 1, 1883, the intestate, a locomotive engineer in the defendant's employ, left Troy as the engineer upon a locomotive drawing a freight train, known as No. 1, from Troy eastwardly over the single-track road of the defendant. The train was due at Petersburgh junction at 6.26 in the morning, but was late in leaving Troy and did not arrive until 8.30. The train dispatcher at Troy, in accordance with whose dispatches trains were moved on the road, sent, at 6.55 A. M., a dispatch to the operator at the junction to "flag and hold train No. 1 for orders," which was received by the operator, who put out a red flag. At 7.19 a train, known as No. 2, moving west, reached the junction, where it had been ordered to meet train No. 1. An answer to a dispatch from the operator at the junction asking if the dispatcher could help train No. 2 was received directing that train No. 2 should meet No. 1 at Hoosick, a station west of the junction. The operator having given a copy of the dispatch to the engineer and conductor of train No. 2, that train moved to the west and met and passed train No. 1 at Hoosick.

The operator supposing that the order for holding train No. 1 was for holding it only with respect to orders for train No. 2, and supposing that the order had been fulfilled when the order directing the passage of the trains at Hoosick

had been received, did not again put up the red flag. Train No. 1, not finding any red flag, passed the junction without stopping and collided with a train, known as No. 6, moving west from Vermont, a few miles from the junction, whereby the intestate was killed. The operator had frequently before received orders in respect to the meeting of trains Nos. 1 and 2, but never before had any orders to hold No. 1 for train No. 6.

*Held*, that the court erred in refusing a request, made by the plaintiff to go to the jury, upon the question of the negligence of the defendant in not taking all proper steps to avoid the accident.

That as neither the persons in charge of train No. 1, nor the operator at the junction, knew that train No. 6 was coming westward on the same track, while the defendant's train dispatcher at Troy did know this fact and the danger arising therefrom, the question as to whether, under the circumstances of the case, it was not the duty of the defendant, if practicable, to send an order to the men in charge of train No. 1, as well as to its operator at the junction, should have been submitted, as a question of fact, to the jury that they might decide whether this added precaution against mistake or neglect ought not to have been taken.

APPEAL from a judgment of nonsuit entered at the Rensselaer Circuit.

The action was to recover damages under the statute for the pecuniary loss to the widow and next of kin, sustained by the death of the plaintiff's intestate who was killed, as was alleged, in consequence of the negligence of the defendant.

Mark Sutherland, the plaintiff's intestate, was a locomotive engineer in the employment of the defendant. On the morning of August 1, 1883, he was engineer upon a locomotive drawing a freight train known as No. 1, from Troy eastwardly, over the single track road of the defendant. This train was due at Petersburgh Junction at 6.26 in the morning. It was late in leaving Troy, and lost time after leaving, so that in fact it did not pass Petersburgh Junction until 8.30. The trains were moved in accordance with telegraphic dispatches from the train dispatcher's office at Troy to the different operators on the line of the road. Johnson, the telegraphic operator at Petersburgh Junction, received a dispatch at about half past six from the train dispatcher at Troy requesting him not to go to breakfast as usual, but wait for orders. At 6.55 the train dispatcher telegraphed him to "flag and hold train No. 1 for orders." As soon as the telegram was received and verified the operator put out a red flag. At this time train No. 2 moving west received orders to meet train No. 1 at Petersburgh Junction. Train No. 2 reached Petersburgh Junction at 7.19 and was held there. Then Johnson

inquired of the train dispatcher "if he could help train No. 2," and received a dispatch for train No. 2 to meet train No. 1 at Hoosick, a station west of Petersburgh Junction. Johnson wrote out the dispatch in triplicate, according to the usual custom rule, and gave a copy to each, the conductor and engineer of.train No. 2 in presence of each other, took in his red flag and filed his copy of the dispatch. Train No. 2 then moved on west and met train No. 1 at Hoosick. Johnson supposed that holding train No. 1 for orders was holding it only for orders with respect to train No. 2, and when train No. 1 received orders in regard to passing train No. 1 he supposed the order to him was fulfilled and for that reason did not again put out his red flag. He had frequently before received orders in respect to trains Nos. 1 and 2 meeting, but never before had he had any order to hold train No. 1 for train No. 6. Train No. 1 reached Petersburgh Junction at about 8.30, and there being no red flag out passed without stopping. Meantime train No. 6 left Vermont coming west, and the two trains came into collision whereby the plaintiff's intestate was killed. Johnson was seventeen years of age and was in the joint employment of the defendant, the Lebanon Springs Railroad, and the station agent. He worked nights as station agent and telegraph operator from 6.20 in the evening until 8.30 in the morning.

Upon the conclusion of the plaintiff's evidence a motion for a nonsuit was made, and the court granted the motion upon the grounds that Johnson was a co-employee of Sutherland; that there was no evidence of his incompetency and no evidence of notice to the defendant of incompetency upon his part. The plantiff excepted to this ruling and asked to go to the jury upon the question of the negligence of the defendant in not taking all proper steps to avoid the accident.

*Charles E. Patterson,* for the appellant.

*E. L. Fursman,* for the respondent.

LANDON, J.:

The cases of *Sheehan* v. *New York Central and Huason River Railroad Company* (91 N. Y., 332), and *Dana* v. *Same Defendant* (92 id., 639), seem to require that this case should

have been left to the jury to determine whether the defendant was guilty of any omission of duty in not taking additional precautions to bring the knowledge of its order to the conductor and engineer of train No. 1. Train No. 1, of which the plaintiff's intestate was engineer, was moving east behind time, and ought to have been stopped and held at the Petersburgh Junction station until train No. 6, which was moving west, should have met and passed it there. The men in charge of train No. 1 did not know that train No. 6 was coming towards it on the same track. But the defendant, by its train dispatcher at Troy, did know the situation and the danger, and in order to avert it telegraphed to Johnson, the telegraph operator and acting station agent at Petersburgh Junction, to "flag and hold train No. 1 for orders." This dispatch was received and acknowledged by the operator, and he entered upon the execution of it. He put out the red flag in its proper place as a signal. It was sufficient to stop train No. 1, if the operator had allowed the flag to remain there until train No. 1 came up to the station. But before train No. 1 came up from the west, train No. 2 came up to the station from the east and stopped there. To the understanding of Johnson, it stopped there in order to await the arrival and passing of train No. 1. But while waiting there, train No. 2 received orders from Troy to move westward to Hoosick and meet train No. 1 there. It moved westward and met train No. 1 at Hoosick. To the understanding of Johnson at Petersburgh Junction, there was no longer any need that train No. 1 should stop at his station; that the purpose for which train No. 1 should stop at Petersburgh Junction was accomplished by the train dispatcher when he gave orders for train No. 2 to meet train No. 1 at Hoosick. Johnson did not know that train No. 6 was coming westward from Vermont towards his station. He therefore took down the red flag; and train No. 1 passed the Petersburgh Junction without warning, and without stopping, and crashed into train No. 6 a mile or two beyond. Was Johnson careless in his execution of the order to "flag and hold train No. 1 for orders?" We may concede it. He had no right to interpret the order as if it read "hold train No. 1 for train No. 2," but it may also be conceded that his misinterpretation was, under the circumstances, just that kind of a mistake which a very slight degree of negligence might cause. We can also see that a little additional caution on the

part of the train dispatcher might have prevented the accident. Had the dispatcher sent an order to the conductor or engineer of train No. 1 to stop at Petersburgh Junction for orders, or for train No. 6, then other minds and other agencies would have been set at work to avert the collision. Such a dispatch might have been sent to Hoosick, or, if sent, directed to the conductor and engineer of train No. 1, to Johnson at Petersburgh Junction, it might have sufficed. We do not say, as a matter of law, that it was, under the circumstances, the duty of the defendant, if practicable, to send the order to the men in charge of train No. 1 as well as to Johnson, but that it was proper to submit the question as one of fact to the jury whether this added precaution against mistake or neglect ought not to have been taken. In the *Sheehan* and *Dana* cases, the operator at the station at Cayuga received from the train dispatcher the oder : "Hold No. 50 for orders." No dispatch was sent to No. 50 itself. The operator, very probably misled by the fact that he knew train No. 61 was about to arrive at the station from a direction opposite to that in which train No. 50 was moving, told the conductor of No. 50 to hold his train for No. 61. The conductor did so, and when No. 61 had passed he moved train No. 50 forward and it collided with train No. 337. There the operator was guilty of the negligence, not reasonably chargeable to Johnson in this case, of not showing his dispatch to the conductor as he had an opportunity to do.

The court in those cases held that whether the company had failed in its duty by not taking additional precautions to secure obedience to its order "to hold No. 50 for orders" was a question for the jury. It pointed out the distinction between those cases and the case of *Slater* v. *Jewett* (85 N. Y. 61). In the latter case the defendant had taken all the precautions to secure obedience to his order that were practicable. He had provided rules, minute, explicit and efficient, and made them known to his servants, which, if observed and followed by all concerned, would bring personal notice to every one entitled to it. But one servant so violated the rules as to prevent the others from obtaining the notice which was necessary to avert disaster. In the *Sheehan* and *Dana* cases, and as we think in this case, it was a question of fact whether the methods adopted by the defendant were ample and explicit enough to bring, without the

likelihood of mistake or miscarriage, the requisite notice to the servants most concerned, of the orders upon which their safety depended.

The judgment should be reversed and a new trial granted, costs to abide the event.

LEARNED, P. J., and WILLIAMS, J., concurred.

Judgment reversed, new trial granted, costs to abide event.