Dwight, J.
The action was for damages resulting from a bodily injury sustained by the plaintiff in a collision between two freight trains on the western division of the defendant’s road. The plaintiff was in the service of the defendant and was acting as fireman on one of the trains. The collision was occasioned by the fault or negligence of a train dispatcher in the office of the company’s division superintendent at Hornellsville. The defendant Bad several years before established a system of rules for the guidance and government of its servants in the performance of their duties, which were printed in convenient form and placed in the hands of all the persons engaged in the dispatching and running of these trains. These rules embraced careful and minute directions, especially for the guidance of train dispatchers in the movement of trains by special orders in deviation from‘their schedule time. The evidence tended to show that these rules were as complete and well devised as any that were known to the business, and that if they had been observed on this occasion by the train dispatcher, to whom they were entirely familiar and perfectly understood, the collision could not have resulted. The collision did in fact result from the neglect by the dispatcher of one or more of the rules above described.
The court at the circuit instructed the jury that this neglect of the train dispatcher was chargeable to the defendant; and, of itself, entitled the plaintiff to a verdict, there being no question of contributory negligence in the case; and it was left to the jury only to assess the damages which the plaintiff had sustained.
The ground of this ruling and disposition of the case was, necessarily, that the train dispatcher was not to be regarded as the fellow servant of the plaintiff, but that, from the nature of his duties and employment, he stood in the place of the master, the defendant itself; that his neglect was the negligence of the defendant. Exceptions to the denial of the defendant’s motion for a nonsuit, at the close of the evidence, to the charge of the court and its refusal to charge, and to its refusal to submit certain questions to the jury, abundantly raise the question of the correctness of the ruling of the court above indicated.
We think that ruling cannot be sustained. No court of review has, we believe, even yet gone so far as to hold that a train dispatcher was, by mere virtue of his employment as such, and without regard to the extent of the discretion committed to him, and irrespective of the rules prescribed for his government, set, absolutely, in the place of the railroad company, his employer, and wholly divested of the character of a fellow servant, under the *61 rule which charges the servant with the risk of the negligence of other servants in the same general employment. In no case has the safe dispatch of the trains of a railroad company been classed among those duties of the master which cannot be delegated so to relieve the master from liability to a servant for their neglect. The duties, thus classified, have been uniformly stated to be to use diligence and care to furnish the servant with proper and reasonably safe appliances and machinery, and with skillful and careful co-workers, and to make and promulgate rules and regulations which if faithfully observed will give reasonable protection to the servant. Slater v. Jewett, 85 N. Y., 61, 73; Besel v. N. Y. C., etc., R. R. Co., 70 id., 171; Sheehan v. Same, 91 id., 339 ; Dana v. Same, 92 id., 639; Abel v. D. & H. Canal Co., 103 id., 581; 4 N. Y. State Rep., 269. It is believed that all the cases in which the master has been held liable to a servant for the negligence of a fellow servant have been cases in which there has been, first, a neglect by the master himself of one or other of the duties above enumerated. Either the culpable act or neglect of the fellow servant has been within the sphere of some duty thus enjoined upon the master, or the master has failed to make and promulgate the necessary rules and regulations for the direction and guidance of the fellow servant in the performance of some duty properly delegated to him.
It is in conformity with the first branch of this proposition that the courts have laid down the principle that the representative character of the servant, which makes the master liable to a fellow servant for his neglect, does not depend upon the grade of his service but upon the character of the duty he is called upon to perform, Monaghan v. The N. Y. C., etc., R. R. Co., 45 Hun, 116 ; 9 N. Y. State Rep., 672 ; citing Crispin v. Babbitt, 81 N. Y., 516, and the character of the duty, as determining the liability of the master to a fellow servant for its neglect, is tested by the inquiry whether it is in the category of those duties which the law enjoins upon the master himself. It seems clear that the duty of the ordinary train dispatcher is not of that description. The duty is one which cannot be performed by the board of directors of the railroad, nor by the general or division superintendent. The work is constant, by day and by night, and must be performed at many stations on the lines of a great railroad. In the office at Hornellsville three dispatchers were employed daily, each being on duty eight hours in the twenty-four. The work must be done by servants and all that the master can be required to do is to exercise due care in the selection of those servants and to prescribe adequate, specific and intelligible rules for their instruction and government. These two requirements are within the enumeration of those which the law imposes upon the master; and when they are complied with, with a degree of care proportioned to the difficulty and importance of the duties which the servants in question are called upon to perform, the duty of the master to the fellow servant of these is performed.
This limitation of the liability of the master in case of the negli *62 gence of a train dispatcher has, we think, been recognized in all the cases in which the question has been presented.
In the case of Monaghan v. The R. R. Co., above cited, the collision in which the plaintiff, a servant of the defendant, was injured, was alleged to have been caused by the fault and neglect of the defendant’s telegraph operator at the Childs street station in Eochester, who was, in fact, the train dispatcher at a very important point on the defendant’s road.
Bradley, J., writing the opinion in that case, says: “ In view of the situation at the location in question the defendant had organized a system with a view to the operation, with reasonable dispatch and safety, of that portion of the road. It had made rules for that purpose of which the plaintiff was advised, and had employed men to conduct that system. * * * There is no question about the sufficiency of these rules and their reasonable applicatioh to the situation. The telegraph operator was charged with important duties at that point, as upon him was imposed the duty of controlling and directing the movements of trains there. This was within the system which the rules provided for at that particular locality, and did not make him the alter ego of the defendant. Citing Slater v. Jewett, supra. * * * He was a co-employee,” and in that case a nonsuit was upheld.
In the case of Rose v. The Boston & Albany R. R. Co., 58 N. Y., 217, where the fault or neglect complained of was that of a “ head conductor ” at Albany, whose duty it was made to prepare and dispatch certain trains, the general term sustained a verdict for the plaintiff, but the court of appeals reversed the judgment and held that, upon the evidence, a nonsuit should have been granted. In that case the court said: “ It does not appear whether he, the head conductor, was intrusted with any discretion upon the subject of starting trains, or whether any regulations on the subject, either by prescribed time-tables or otherwise, had been made by the company. But it is obvious that the company may have prescribed proper and safe rules in respect to the starting of those trains, and that those .rules may have been disregarded by the persons who actually started those trains so near each other. It may be conceded that it is the duty of a railroad corporation to prescribe, either by means of time-tables or by other suitable modes, regulations for running their trains with a view to their safety ; but it is obvious that obedience to those regulations must be intrusted to employees having charge of the trains. Such obedience is matter of executive detail which, in the nature of things, no corporation or any general agent of a corporation can possibly oversee, and as to which employees must be relied upon.” And it was held that the motion for a nonsuit should have been granted upon the precise ground that it did not appear that the defendant had been negligent of its duty to prescribe the necessary rules and regulations for the government of its servants.
■The case of Sheehan v. The N. Y., etc., R. R. Co., 91 N. Y., 332, was submitted to the jury upon the precise question whether the defendant’s rules and regulations for the dispatch of trains were reasonably adequate for the occasion then presented, *63 and. in the opinion of the court of appeals affirming a verdict for the plaintiff, Danforth, .J., says: “Ho communication was sent to those persons (the conductor and engineer of one of the colliding trains), no rule of the defendant required it.” And in the case of Dana, growing out of the same accident, 92 N. Y., 639, in which a verdict directed for the defendant was sustained at general term, the court of appeals, after citing the case of Slater, supra, to the effect that a railroad company is bound to carry on its business under a proper system of regulations, says: “ It does not appear from the record that the injury complained of was not immediately due to the defendant’s omission of duty in that respect, and the trial judge erred in taking the case from, the jury.”
In the case of Sutherland v. The Troy & Boston R. R. Co., which was an action by a servant of the defendant for an injury caused by the error or neglect of a train dispatcher, the general term, in the third department, set aside a non-suit on the ground, as stated by Landon, J., that “it was a question of fact for the jury whether the methods adopted by the defendant were ample and explicit enough to bring, without the likelihood of mistake or miscarriage, the requisite notice to the servants most concerned of the order upon which their safety depended; ” and the cases of Sheehan and Dana were cited as authority for the decision.
The case of Slater v. Jewett, supra, has been urged by counsel for the respondent here as authority for the proposition that every train dispatcher does, by virtue of his employment as such, stand absolutely in the place of the master, and by any negligence on his part charges the master with liability to a fellow servant for injury resulting therefrom. It is true that it was said in the opinion in that case, of a class of persons there denominated “ train dispatchers,” and who are also spoken of as “ over-looking officers”' of railroad companies, that they concededly stand in the place of the company itself; but no question of the negligence of any person of that class arose in that case; whereas the eminent judge who wrote the opinion reached the conclusion and the court held that the telegraph operator, whose duty it was to receive and transmit or communicate orders for the movement of trains, and who, by whatever name he may be called, was in fact the immediate dispatcher of the trains in question, did not stand in the. place of the master, and that his negligence did not charge the defendant with liability to a fellow servant, because his fault consisted in the neglect or violation of sufficient rules prescribed for his government.
In the case of Shiner v. Russell, Receiver, etc.. 6 N. Y. State Rep., 78, the court at general term, in the second department, says: “If, therefore, there were proper rules for the management of all the trains on the occasion in question, and the accident occurred through the negligence of any other (employee, in the execution of those proper rules, the plaintiff cannot recover.”
In the case of Ford v. The L. S. & M. S. R. R. Co., 17 N. Y. State Rep., 393, in the general term of the superior court of Buffalo, Beckwith, Oh. J., says: “The proof tended to show that *64 the defendant had never promulgated any rules in regard to the manner of loading lumber, nor as to the kind of cars to be used in its transportation over its road. The importance of the business of transporting lumber would seem to require the adoption of some system on the part of the railroad companies having regard to the safety of their servants and others. But in this case the evidence was such as to allow a finding by the jury that the defendant left all that part of its duty to the foreman who superintended the loading of the lumber. These foremen, therefore, stood in the place of the defendant, and their acts were the acts of the defendant.”
In Anthony v. Leeret, 105 N. Y., 600 ; 8 N. Y. State Rep., 542, the defendants’ appeal was sustained on the ground that the injury complained of resulted from the disobedience, by a fellow-servant, of instructions given by the master, which, if obeyed, would have prevented the accident. And in Abel v. The D. & H. Canal Co., 103 N. Y., 581; 4 N. Y. State Rep., 269, a non-suit was set aside on the ground that it w.as a question for the jury whether the instructions actually promulgated by the defendant were sufficient, if observed, to have prevented the accident.
We think it is the clear doctrine of these, and many other cases of similar import, that, in an action by a servant against the master, the negligence of a fellow-servant of whatever grade, unless the duty neglected was one of those which the law imposes upon the master himself, is attributable to the master only where he has failed to prescribe adequate and proper rules and regula: tians for the government of the fellow-servant in the performance of his duties, or, to vary the statement of the same conclusion, that the master will not be held liable to his servant for the disobedience by a fellow-servant, whatever his duty (with the exception above noted), of rules and regulations properly prescribed by the master, which, if obeyed, would have prevented the injury complained of; and, further, that where any question exists as to the adequacy of the rules or the sufficiency of their promulgation, that question is one for the jury.
If these conclusions are correctly drawn, it was error for the court, in this case, to direct a verdict for the plaintiff for such damages as the jury might assess.
The judgment and order appealed from should be reversed and a new trial granted.
Judgment and order reversed and a new trial granted, with costs to abide the event.
Barker, P. J., and Macomber, J., concur.