JOHN HEALEY vs. NEW YORK, NEW HAVEN AND HARTFORD
RAILROAD CO.

PROVIDENCE—JUNE 15, 1897.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

On one of the counts of a declaration the jury found a general verdict and coupled with it special findings which were not only inconsistent with the general verdict but were inconsistent with each other :—

*Held*, that the jury must have been mistaken either as to its general verdict or its special findings ; and, as it was impossible to determine where the mistake was, the entire findings were a nullity.

A brakeman on a railway train which was run according to a train order was injured in a collision with an engine on the same track running toward the train contrary to orders :—

*Held*, that the engineer who ran the engine contrary to orders was a fellow servant of the brakeman, both being engaged in different branches of a common service.

*Held*, further, that, in the absence of proof of want of due care in selecting the engineer, the employer was not liable for his negligence as to a fellow servant.

The danger incident to the running of engines, including the carelessness of engineers, is one of the risks of the employment which the fellow servants of the engineer assume when they enter the service of the corporation.

It is the duty of a master to provide a reasonably safe place for his employees to work in, to furnish and keep in repair all the appliances of the business, and to protect his servant from injury therefrom by reason of unseen defects, so far as human care and foresight may accomplish that result :—

But a master is not an insurer of the servant against injury, and is not liable for the willful misconduct of a servant in rendering the place of labor unsafe and dangerous whereby a fellow servant is injured.

The defendant having done all that it could reasonably be called upon to do, the plaintiff, a fellow servant with the person causing the injury, had no legal ground of complaint except as against the man who caused it.

TRESPASS ON THE CASE for negligence.    Heard on the petitions of both parties for a new trial.

TILLINGHAST, J.    The verdict in this case was for the plaintiff on the first count of the declaration, and for the defendant on the second count.    The first count is based upon an accident which happened to the plaintiff, who was a brakeman in the defendant's employ, on the 17th day of February, 1893, at Providence, while he was engaged in uncoupling cars ; and the second count is based upon another

accident which happened to the plaintiff, while in defendant's employ in the same capacity, on the 16th day of June, 1893, at Carolina station in Charlestown. The defendant petitions for a new trial on the first count of the declaration, and the plaintiff petitions for a new trial on the second count thereof.

Of the nine distinct grounds upon which the defendant bases its petition for a new trial we will consider but one, for the reason that we are of the opinion that a new trial must be granted on that ground, and it therefore becomes unnecessary to consider the others.

The eighth ground on which defendant relies is this: "Because the verdict upon the first count of the plaintiff's declaration as found, is against the special findings of the jury and inconsistent therewith."

The special findings referred to are as follows:

"1. The release marked 'D' and dated April 24, 1893, was executed by the plaintiff by his making his mark, in the presence of George W. Hobbs.

2. The plaintiff did execute said release marked 'D' voluntarily and of his own free will.

3. The release marked 'D' was read to the plaintiff before its execution by Mr. Hobbs.

4. The release marked 'D' was not obtained by the fraud of any agent or servant of the defendant.

5. The plaintiff did not know what he was executing when he executed the release marked 'D.'

6. The plaintiff could not read at the time the release marked 'D' is claimed to have been executed."

The release referred to in these special findings was as follows:

"KNOW ALL MEN, That I, John Healey, have received of the New York, New Haven & Hartford Railroad Company the sum of Twenty-seven and Thirty-hundreths ($27.30) Dollars, in full payment, discharge, release and satisfaction of all claims, demands, and causes of action whatsoever and especially of and from all claims and demands against said

company on account of injuries to person, sustained by me by having my fingers crushed while uncoupling cars at Providence, R. I., on the 16th day of February, 1893, and of all damages on account of such injuries.

In Witness Whereof, I have hereunto set my hand and seal this 24th day of April, 1893.

His

JOHN × HEALEY.    (L. S.)

Signed, sealed and delivered        Mark
   in presence of

   WILLARD I. TURNER,
   GEORGE W. HOBBS."

It will at once be seen, by an examination. of the special findings aforesaid, that they are both inconsistent with themselves and also inconsistent with the general verdict of guilty. The jury found : (1) That the release in question was executed by the plaintiff ; (2) That it was executed voluntarily and of his own free will ; (3) That it was read to plaintiff before its execution ; (4) That it was not obtained by fraud ; and (5) That notwithstanding all this, the plaintiff did not know what he was executing when he signed it. The last named finding it so clearly inconsistent with those which precede it as to show that the jury must have been mistaken either as to it, or as to the others. And as it is impossible for the court to determine wherein the mistake exists, we must hold that the entire findings were a nullity. Said first five findings are also clearly inconsistent with the general verdict of guilty. If the release was voluntarily executed by the plaintiff after it was read to him, and no fraud was practiced upon him in obtaining it, then it was a bar to his action and the verdict should have been for the defendant ; as it was only by ignoring the release as a valid and binding instrument that the plaintiff could be allowed to recover. The jury have practically found both ways as to this instrument—first that it was valid and binding, and second that it was invalid and of no avail—and have based their verdict upon the latter theory. Such a verdict of course cannot be

allowed to stand. And here we may suggest that it would be well for the trial court, in its discretion, to limit as far as may be the number of issues submitted to the jury under the statute, in order that they may not be confused, and that such questions as are necessarily involved in the general verdict may be excluded, as far as possible, from the special findings.

For the reasons above given, the defendant's petition for a new trial is granted on the first count.

We will now consider the plaintiff's petition for a new trial on the second count in the declaration. The facts set out in the record are briefly as follows: On the 16th day of June, 1893, the train upon which the plaintiff was a brakeman left Stonington for Providence, and arrived at Carolina at about seven o'clock A. M. Prior to arriving at this station the train had stopped at Wood River Junction, in pursuance of a signal, to receive orders. Up to this time the train had been run on the east bound track, which was the regular track for this train to run on. The train was under the government of the conductor, Joseph R. Adams. At the last named station a train order was delivered to the conductor, directing him to run his train from that point to Kingston on the west bound track, and informing him that he had right of track over all west bound trains. In accordance with this order his train took the west bound track at Wood River Junction and proceeded on its way, and as it approached said Carolina station at the curve the train came in collision with an engine running towards plaintiff's train on the same, or west bound, track. It appears that an engine had become disabled at Carolina station on the east bound track, so as to render it necessary to run plaintiff's train on the west bound track to avoid the obstruction, and hence the giving of the order aforesaid to conductor of plaintiff's train. Albert C. Pickering was a locomotive engineer, in the employ of defendant, and had charge of the engine, No. 336, which collided with plaintiff's train. At Kingston, on the day in question, said Pickering was duly ordered by the division superintendent, by telegraph, to take the east bound track.

This order was received by engineer Pickering at Kingston, but instead of obeying the same he ran his engine on to the west bound track, resulting in a collision with plaintiff's train as aforesaid, whereby plaintiff was injured.

The jury found specially as follows :

"13.    The accident on June 16, 1893, and the injuries to the plaintiff, by him sustained on that date, were occasioned by the disobedience of train orders to locomotive engineer Pickering."

"14.    The injuries sustained by the plaintiff on June 16, 1893, were occasioned by the negligence of engineer Pickering."

The grounds upon which the plaintiff petitions for a new trial are that the court erred in refusing to instruct the jury as follows :

"1.    The plaintiff requests the court to charge the jury that the engineer, Pickering, was in fact the conductor of his south bound train, and was at the time of the said collision at Carolina on June 16th, 1893, acting as vice-principal of the defendant and was exercising its functions.

2.    The plaintiff requests the court to charge that it was the defendant's duty, owed to the plaintiff, to keep its track clear of obstructions on the 16th day of June, A. D. 1893, at Carolina station, and that said duty was not an assignable duty.

3.    The plaintiff requests the court to charge that it is immaterial, in the case at bar, that the engineer, Pickering, disobeyed his instructions on the 16th day of June, 1893, as his disobedience does not release the defendant from its liability for his (plaintiff's) injuries incurred at Carolina, on said date."

The first and third requests to charge may properly be considered together.    We think the court rightly refused to grant them.    The engineer, Pickering, whose reckless disobedience of orders, in running his engine on to the west bound track, caused the accident, was clearly a fellow servant with the plaintiff, not only under the decisions of this court,

but also under the great current of decisions everywhere. They were simply engaged in different branches of a common service, and the service which the engineer was performing was of that character which the defendant could properly devolve upon him (there being nothing to show that due care was not exercised in selecting him therefor) without itself being liable for his negligence as to a fellow servant.    See *Brodeur* v. *Valley Falls Co.*, 16 R. I. 448 ; *Hanna* v. *Granger*, 18 R. I. 507.

But plaintiff's counsel, while conceding that an engineer and brakeman on the same train are fellow servants, so long as the former is engaged in simply manipulating his locomotive, contends that when, in addition thereto, he assumes, or is appointed to *conduct*, a train agreeably to general rules or special orders, he is no longer a fellow servant with a brakeman, and especially with one upon another train.    We do not understand that the case before us shows such a state of facts as this argument assumes.    There is nothing to show that Pickering assumed or was ordered to *conduct a train*, or that he was in fact conducting a train when the collision occurred.    He was simply running an engine, or what in railroad parlance is called a "wild engine," without any train being attached thereto, for some purpose connected with the management of the road ; and he was running it under the direction of the division superintendent, who was practically the conductor thereof ; and had the engineer obeyed the instructions received, the accident would not have happened. In short, so far as appears, the defendant corporation had furnished safe and proper appliances for the management of its road, and had given explicit directions as to the running of the engine in question, which, if they had been obeyed, would have fully protected the plaintiff in his employment. And we fail to see that the defendant can legally be called upon to respond in damages for the happening of an accident in such circumstances ; and for the simple reason that no negligence can be attributed to it.    It was not a question for the jury whether the dispatching of an engine and tender, under the control of an ordinary engineer, constituted negli-

gence on the part of defendant. It is a matter of every-day occurrence on railroads that engines are thus sent out. And the danger incident to the running thereof, including the carelessness of engineers, is clearly one of the risks of the employment which the fellow servants of the engineer assume when they enter the service of the corporation. See *Snow* v. *Railway Co.*, 8 Allen, 441 (448).

As to the second request to charge, viz., that it was the defendant's duty, owed to plaintiff, to keep its track clear of obstructions, and that this was not an assignable duty, we also think the court did not err in refusing the same, in so far, at any rate, as it is applicable to this case. For, while it is the duty of a master to provide a reasonably safe place for his employees to work in, and to furnish and keep in repair all the appliances of the business, and to protect his servants from injury therefrom by reason of unseen defects, so far as human care and 'foresight can accomplish that result, yet he is not an insurer of the servant against injury, nor is he liable for the willful misconduct of a servant in rendering the place of labor unsafe and dangerous, whereby a fellow servant is injured. In *Railway Co.* v. *Frost*, 74 Fed. Rep. 965, cited by plaintiff's counsel, which was a case where, by reason of the negligence of the telegraph operator, whose duty it was to receive and deliver the orders of the train dispatcher, the plaintiff was injured, the court said : ''It seems just in principle to hold that the company has discharged its duty when it has given information to one of its servants who is engaged in the common employment of the others that are to be affected thereby, and has instructed him to notify his co-employees, and that when the company has exercised due care in selecting such local operator in the first instance, and has not been negligent in employing or retaining him in his office, it has discharged its duty, and that such operator stands in the attitude of a fellow servant to the trainmen.'' See also *Slater* v. *Jewett*, 85 N. Y. 61. No amount of diligence on the part of a railroad company can prevent an accident like the one upon which the second count aforesaid is based. The company has the right to presume

that its orders will be strictly followed ; and all it can do when such orders are disobeyed is to summarily discharge the servant who thus offends, as was done in the case at bar. So far as appears, the defendant had no 'more reason to believe that Pickering would disobey the orders of his superior than the plaintiff had.  Such conduct was not anticipated, and could not have been anticipated by anybody.  It was simply one of those strange and unaccountable things which sometimes happens.  But as there was nothing which the defendant could reasonably be called upon to do which it did not do in the premises, it follows that as to the plaintiff, who was a fellow servant with the person causing the injury, he has no legal ground of complaint except as against the man who caused it.

The plaintiff's petition for new trial on the second count is denied and dismissed, and the case is remitted to the Common Pleas Division for new trial upon the first count as aforesaid.

*Ezra K. Parker*, for plaintiff.

*Frank S. Arnold*, for defendant.