# THE

# New York Supplement.

## VOLUME II.

FORD *v.* LAKE SHORE & M. S. R. Co.

*(Superior Court of Buffalo, General Term. July 13, 1888.)*

1. NEGLIGENCE—WHAT CONSTITUTES—WHEN A QUESTION FOR THE JURY.

   Plaintiff's intestate, a switchman in defendant's employ, was killed, while in the discharge of his duty, by the falling of several pieces of timber from defendant's car, which was a gondola, or car with a box from 18 to 24 inches high, without brackets at the sides for stakes to support the lumber, as lumber cars usually have. One end of each piece of lumber was put in the car, the other end projecting over the end-board, the pieces lapping in the middle of the car, which was relied on to bind the load; the pile being from 1½ to 2 feet above the top of the box in the shape of a roof. The cars were loaded, by direction of the yard foreman, for the purpose of carrying the lumber about a mile, having to pass over several switches, which would jolt the load. The pieces of timber were 28 feet long by 5¼ inches thick and 8¼ inches broad. Witnesses testified that they had seen these cars used, and never heard of any accident before. Defendant had adopted no rules for loading lumber, nor as to the kind of car used; but the method pursued was adopted by the employes, who had used it considerably, and it was considered safe by the foreman. *Held,* in an action for such death, that the question of negligence, on such facts, was for the jury, and a verdict for plaintiff should not be set aside.[1]

2. SAME—WHAT CONSTITUTES—INSTRUCTIONS.

   Upon such evidence, the jury being instructed that it was for them to decide whether defendant had disregarded what would be reasonably suggested to the mind of an ordinarily prudent man in the manner in which the lumber was loaded, and that if the accident was not within the reasonable contemplation of the defendant, and if it happened after defendant had exercised such a degree of prudence and caution to prevent it, it would not be liable, it was not error to refuse to charge that "unless the jury believe that, in the exercise of ordinary care, defendant could have foreseen that this accident would probably occur by loading the cars in the manner in which they did, they must find for the defendant."[1]

On exceptions from trial term.

Action by Emily Ford, administratrix of John Ford, against the Lake Shore & Michigan Southern Railway Company. The action was brought for alleged negligence on the part of the defendant, causing the death of the plaintiff's husband and intestate, John Ford, who was employed by the defendant as a switchman, by reason of a heavy timber falling upon him, from a car loaded with lumber by the defendant, while he was standing at the switch which he was employed to tend. The cars used on this occasion by the defendant were gondola cars, some of the witnesses calling them coal cars. They were not regular lumber cars, but cars with boxes from eighteen inches

---

[1] See, also, Railroad Co. v. Gower, (Tenn.) 3 S. W. Rep. 824; Scott v. Navigation Co., (Or.) 13 Pac. Rep. 98, and note; Bushby v. Railroad Co., (N. Y.) 14 N. E. Rep. 407.

to two feet high, without brackets on the outside for stakes to hold the lumber, as lumber cars usually have. The cars that had end-boards dropping down were loaded flat; and, where the end-board was stationary, one end of the timber loaded was put in, the other extending over the end-board. The lumber was so piled that one piece lapped the others, with the object of binding the load. The lumber was piled above the top of the boxes a foot and a half to two feet. The lapping of the pieces of timber was relied upon to keep it on. The cars were loaded by the defendant's employes, and the method in which they were loaded was directed by another employe, who was a foreman in the defendant's yard. The lumber was to be drawn about a mile, to the shops of the Buffalo Car Manufacturing Company. There was evidence tending to show that the train would pass over several switches in its route, and that some jolting would be caused. While the train was passing the switch at which the plaintiff's intestate was placed, several pieces of timber fell off from one of the cars upon the switchman, killing him. The lumber so loaded consisted of pieces of timber intended for car-sills, and they were twenty-eight feet in length, five and a quarter inches thick, and eight and a quarter inches wide. Some of the witnesses testified that while ordinarily lumber cars, with stakes, are used, they had seen these gondola cars used, and had heard of no accident before. The defendant's foreman testified that, "for such lumber as that, gondolas are used. When they are making short hauls, we load the pile up, so they shall bind each other, and bind the load in the center. That is the way these cars were loaded." The foreman and assistant foreman testified that they, at the time, examined the loads, and considered the manner of loading safe. The jury found a verdict for $4,000, and the court sent the exceptions to the general term in the first instance.

Argued before BECKWITH, C. J., and TITUS, J.

*James Fraser Gluck,* for appellant. *Tracy C. Becker,* for respondent.

BECKWITH, C. J. In the argument presented by the learned counsel for the defendant, he assumes a proposition which, as it seems to me, is not established by the evidence. He assumes that the manner of loading and carrying lumber practiced on the occasion when the plaintiff's intestate lost his life was a mode which had been adopted and tried in a great many instances, and uniformly pursued in the business of the defendant for a long time,—"perhaps four years,"—and that in all that period, and in all such experience, no. similar accident had happened; that, on the occasion in question, the defendant loaded and carried the timbers, as it had always uniformly done without a mishap; and consequently that the plaintiff failed to establish any facts upon which, as ground for inference of negligence, the case could be submitted to the jury,—the idea being that, where universal experience has established the safety of a thing or process, the plaintiff must prove the existence of some special defect that has crept into the thing, or some special omission of customary usage with respect to the process; and he cites, in support of his position, among other cases, the following decisions of the court of appeals: *Dougan* v. *Transportation Co.,* 56 N. Y. 1; *Loftus* v. *Ferry Co.,* 84 N. Y. 455; *Burke* v. *Witherbee,* 98 N. Y. 562; *Marsh* v. *Chickering,* 101 N. Y. 396, 5 N. E. Rep. 56; *Lafflin* v. *Railroad Co.,* 106 N. Y. 136, 12 N. E. Rep. 599. In *Dougan* v. *Transportation Co.* the form of gangway in question had been in use upon all of the steam-boats on Lake Champlain for years, and there was no proof tending to show that any one had ever before fallen, and gone under the railing overboard. In *Loftus* v. *Ferry Co.* 40,000,000 of people annually passed over the defendant's ferries, and until the occurrence in question no accident had happened from any person falling or getting through the space in the guard. In *Burke* v. *Witherbee* the judge writing the opinion says: "In the mine alone, cars drawn by a hook must have made several hundred thousand passages without a single accident. What more could any

reasonable or prudent man have to justify him in believing that this conven-
ient appliance was also a safe and proper one." In *Marsh* v. *Chickering*, the
ladder which slipped, causing the plaintiff's hurt, had been in use by him
safely for six weeks. In the case of *Hubbell* v. *City of Yonkers*, 104 N. Y.
434, 10 N. E. Rep. 858, it appeared that the street had been in the same con-
dition since its opening, over 10 years before, and that no similar accident
had occurred. In *Lafflin* v. *Railroad Co.* the platform had been used for
many years by passengers; and prior to the accident no one had been injured,
or had suffered any inconvenience on account of the distance from the cars to
the platform. The cases cited all recognize a truth, which is but a law, re-
lating to the operations of the human mind, that what has been noticed in
infinite instances to be a fact or incident attendant upon certain circumstances
will be reposed upon as a fact or incident inseparable from the same circum-
stances. The scientist who investigates the operations of nature, and discov-
ers the constant recurrence of a fact with certain circumstances, relies upon
the truth of its permanency of place and connection in the order of the phys-
ical world, and makes it a premise in his reasoning. The inference is irresist-
ible that what has proved, through a long experience, to be true or sufficient,
will continue to be so; and practical men, in all the affairs of life, rely upon
such a deduction. In the cases cited, the fact that long experience had dem-
onstrated the continuous and unexceptive sufficiency and safety of the appli-
ances, the fact that through a vast number of trials, and up to the time of
the accident in question, the appliances had proved to be sufficient, was ad-
mitted or conclusively proved, and afforded a ground for the court to say, as
a matter of law, no evidence being given of a chance defect, or of a fault oc-
curring, which skill or prudence would have discovered, that the attention
exercised by the defendant was within the limits of ordinary or reasonable
care. In the case at bar the proof in this respect was deficient, and the court
would not have been justified in nonsuiting the plaintiff on the ground that
the mode of handling the lumber adopted on the occasion when Ford lost his
life had been demonstrated by experience to be a safe one, and the plaintiff
had failed to point out any special defect that had occurred in the appliances,
or special omission of ordinary duty. It does not avail for a witness to say
that he had known of no like accident, or to affirm, in general language, that
the manner of doing a thing was according to the mode adopted by the de-
fendant. The facts should be proved upon which a defendant claims that the
mode adopted, and upon which he relied, had been established by experience
to be safe, so that the court or jury may judge of his right to rely on such ex-
perience. The evidence here fails to show such an extent of practice of the
method the defendant adopted in carrying the lumber as is necessary to ena-
ble the court to say, as a matter of law, that the defendant's conduct was
proper. The trial judge was therefore right in refusing to nonsuit the plain-
tiff on the ground so far considered.

The question remains whether there was otherwise evidence for the jury.
The proofs tended to show that the defendant had never promulgated any
rules, or given any direction, as to the manner of loading lumber, nor as to
the kind of cars to be used for its transportation over its road. The impor-
tance and extent of the business of transporting lumber would seem to re-
quire the adoption of some system on the part of railroad companies having
regard to the safety of their servants and others. But in this case the evi-
dence was such as to allow a finding by the jury that the defendant left all
that part of its duty to the foremen who superintended the loading of the
lumber. These foremen, therefore, stood in the place of the defendant, and
their acts were the acts of the defendant. *Crispin* v. *Babbitt*, 81 N. Y. 516;
*Anthony* v. *Leeret*, 105 N. Y. 600, 12 N. E. Rep. 561; *Abel* v. *Canal Co.*, 103
N. Y. 581, 9 N. E. Rep. 325. There is some evidence tending to show that
the defendant's foremen had adopted, as a proper mode of loading and carrying

lumber and timber, the mode followed on the occasion when the plaintiff's intestate was killed; that is to say, the piling it on coal cars, and heaping it roof-shaped above the lateral supports or box sides of the cars, relying on the width of base, and gravity of the pieces of timber, to keep them in place. There is evidence that they, in their minds, had fixed upon this method as suitable, although there was not evidence of such a uniform and continued test of its sufficiency by use as would force upon a man's mind a conclusion that it was a safe method. The defendant claims this mode was skillful and prudent. Whether it was or not, involves a consideration of the complex subject of the car, its shape, box, want of stakes, and the heaping of the timber above the box.· The plaintiff gave evidence showing the character of the cars, the height of the boxes, the omission of the stakes, the manner of piling the timber on the car-box, the length, thickness, and width of the timbers. The timbers were about twenty-eight feet in length, eight and one-quarter inches wide, and five and one-fourth inches thick. The proof of all these circumstances, together with the facts relating to the distance the timber was to be hauled, the possibility of the loose timbers, with a width of eight and one-fourth inches, falling off on the switches to be crossed, and the effect upon the load of the jolt in crossing the switches, altogether made a fair question for the jury whether the manner of loading and the mode and means of carrying this lumber, which were the acts of the defendant, were reasonably skillful, prudent, and safe. The plaintiff says they were not; and the facts, I think, were such as necessarily carried the case to the jury. The defendant says the manner and mode were sufficient, because experience had demonstrated them to be so. But, as I have shown, the proofs fail to establish the facts which warrant the legal deduction of reasonable care on the part of the defendant; and without that deduction the case was one for the jury. A careful examination of the testimony will fail to disclose the *data* for such a legal inference.

Some of the defendant's requests of the court to charge were made on the theory that experience had justified the defendant's mode of loading and carrying the lumber; that, as a matter of law, there was no negligence or want of skill in the mode. If that supposition were correct, it would have been the duty of the court to charge that the plaintiff must establish some chance defect in the car, or some omission of a specific duty,—some special defect of thing or process,—which reasonable care would have detected. But, as I look at the evidence, the question is the ordinary one whether the means and appliances used by the defendant were reasonably prudent, having regard to its duty towards its servants. The defendant's counsel requested the court to charge that "unless the jury believe that, in the exercise of ordinary care, the defendant could have foreseen that this accident would probably happen by loading the cars in the manner in which they did, they must find for the defendant." The court declined to change his charge. In this I think he did no wrong to the defendant. A bare, isolated request, though containing a correct proposition of law, the request seeming to purport something different from the instructions already given, may sometimes mislead a jury, and may be refused when the charge has substantially covered the case made by the evidence. Literally, the request was that the defendant must have been able to foresee this particular accident. The court, as it seems to me, had already given the instruction. The court stated with great particularity all the facts, and submitted the question to the jury whether the "defendant disregarded what would be reasonably suggested to the mind of an ordinarily prudent person in the manner and method in which this lumber was loaded;" and the court further said to the jury that if the accident "was not within the reasonable contemplation of the defendant,—if it happened, under these circumstances, after the defendant had exercised such a degree of caution and prudence to prevent such accident,—then the defendant becomes relieved from

liability, and your verdict should be for the defendant." If I am right in the conclusion that the facts proved would not warrant a legal inference that the defendant was free from negligence, because experience had not established the safety of its mode of loading and moving the lumber, then the charge of the court was as favorable to the defendant as could be asked, and its refusal to charge the requests was not error. The plaintiff should have judgment on the verdict, with costs.

TITUS, J., concurs.   HATCH, J., does not sit in this case.