EDWARD W. HANKINS, RESPONDENT, v. THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, APPELLANT.

*Train dispatcher — negligence of, causing injury to a co-employee — company not liable — its duty as to making rules, etc.*

In an action, brought to recover damages for an injury sustained by reason of a collision between two freight trains on the defendant's railroad, it appeared that the plaintiff was a fireman in the employment of the defendant upon one of the trains. The company had established a system of rules for the guidance of its servants in the performance of their duties, and the collision resulted from the neglect, on the part of a train dispatcher in the defendant's employment, to observe such rules.

*Held*, that the train dispatcher was not, by virtue of his employment as such, and without regard to the extent of the discretion committed to him, and irrespective of the rules prescribed for his government, in such a position that his negligence was the negligence of his employer, nor was he divested of the character of a fellow servant of the plaintiff.

*Slater* v. *Jewett* (85 N. Y., 61) distinguished.

Where the master has exercised due care in the selection of the servants employed, and has prescribed adequate, specific and intelligible rules for their instruction and government, with a degree of care proportionate to the difficulty and importance of the duties which the servants in question are called upon to perform, the duty of the master to its servants is performed.

APPEAL by the defendant from a judgment, entered, upon the verdict of a jury in favor of the plaintiff for $10,000, in the office of the clerk of the county of Cattaraugus on February 25, 1889; and also from an order, entered in said clerk's office on February 23, 1889, denying the defendant's motion, made upon the minutes of the court, to set aside the verdict and for a new trial.

*J. H. Stevens, Jr.*, for the appellant.

*W. S. Thrasher*, for the respondent.

DWIGHT, J.:

The action was for damages resulting from a bodily injury sustained by the plaintiff in a collision between two freight trains, on the western division of the defendant's road. The plaintiff was in the service of the defendant, and was acting as fireman of one of the trains. The collision was occasioned by the fault or negligence of a train dispatcher, in the office of the company's division

superintendent, at Hornellsville. The defendant had several years before established a system of rules for the guidance and government of its servants in the performance of their duties, which were printed in convenient form and placed in the hands of all the persons engaged in the dispatching and running of these trains. These rules embrace careful and minute directions, especially for the guidance of train dispatchers, in the movement of trains by special orders, in deviation from their schedule time. The evidence tended to show that these rules were as complete and well devised as any that were known to the business, and that if they had been observed on this occasion by the train dispatcher, to whom they were entirely familiar and perfectly understood, the collision could not have resulted. The collision did, in fact, result from the neglect by the dispatcher of one or more of the rules above described. The court, at the circuit, instructed the jury that this neglect of the train dispatcher was chargeable to the defendant; and, of itself, entitled the plaintiff to a verdict, there being no question of contributory negligence in the case; and it was left to the jury only to assess the damages which the plaintiff had sustained.

The ground of this ruling and disposition of the case was, necessarily, that the train dispatcher was not to be regarded as the fellow servant of the plaintiff, but that, from the nature of his duties and employment, he stood in the place of the master, the defendant itself; that his neglect was the negligence of the defendant. Exceptions to the denial of the defendant's motion for a non-suit, at the close of the evidence, to the charge of the court and its refusal to charge, and to its refusal to submit certain questions to the jury, abundantly raise the question of the correctness of the ruling of the court above indicated.

We think that ruling cannot be sustained. No court of review has, we believe, ever yet gone so far as to hold that a train dispatcher was, by mere virtue of his employment as such, and without regard to the extent of the discretion committed to him, and irrespective of the rules prescribed for his government, set, absolutely, in the place of the railroad company, his employer, and wholly divested of the character of a fellow servant, under the rule which charges the servant with the risk of the negligence of other servants in the same general employment. In no case

has the safe dispatch of the trains of a railroad company been classed among those duties of a master which cannot be delegated so as to relieve the master from liability to a servant for their neglect. The duties thus classified have been uniformly stated to be to use diligence and care to furnish the servant with proper and reasonably safe appliances and machinery, and with skillful and careful co-workers, and to make and promulgate rules and regulations which, if faithfully observed, will give reasonable protection to the servant. (*Slater* v. *Jewett*, 85 N. Y., 61, 73; *Besel* v. *N. Y. C., etc., R. R. Co.*, 70 id., 171; *Sheehan* v. *N. Y. C., etc., R. R. Co.*, 91 id., 339; *Dana* v. *N. Y. C., etc., R. R. Co.*, 92 id., 639; *Abel* v. *D. and H. Canal Co.*, 103 id., 581.) It is believed that all the cases in which the master has been held liable to a servant for the negligence of a fellow servant have been cases in which there has been, first, a neglect by the master himself of one or other of the duties above enumerated. Either the culpable act or neglect of the fellow servant has been within the sphere of some duty thus enjoined upon the master, or the master has failed to make and promulgate the necessary rules and regulations for the direction and guidance of the fellow servant in the performance of some duty properly delegated to him. It is in conformity with the first branch of this proposition that the courts have laid down the principle that the representative character of the servant, which makes the master liable to a fellow servant for his neglect, does not depend upon the grade of his service, but upon the character of the duty he is called upon to perform, (*Monaghan* v. *N. Y. C., etc., R. R. Co.*, 45 Hun, 116, citing *Crispin* v. *Babbitt*, 81 N. Y., 516), and the character of the duty — as determining the liability of the master to a fellow servant for its neglect — is tested by the inquiry whether it is in the category of those duties which the law enjoins upon the master himself. It seems clear that the duty of the ordinary train dispatcher is not of that description. The duty is one which cannot be performed by the board of directors of the railroad nor by the general or division superintendent. The work is constant, by day and by night, and must be performed at many stations on the lines of a great railroad. In the office at Hornellsville three dispatchers were employed daily, each being on duty eight hours of the twenty-four. The work must be done by servants, and all that the master

can be required to do is to exercise due care in the selection of those servants and to prescribe adequate, specific and intelligible rules for their instruction and government. These two requirements are within the enumeration of those which the law imposes upon the master; and when they are complied with, with a degree of care proportioned to the difficulty and importance of the duties which the servants in question are called upon to perform, the duty of the master to the fellow servant of these is performed. This limitation of the liability of the master, in case of the negligence of a train dispatcher, has, we think, been recognized in all the cases in which the question has been presented.

In the case of *Monaghan* v. *The Railroad Company*, above cited, the collision in which the plaintiff, a servant of the defendant, was injured, was alleged to have been caused by the fault and neglect of the defendant's telegraph operator at the Childs street station in Rochester, who was, in fact, the train dispatcher at a very important point on the defendant's road. BRADLEY, J., writing the opinion in that case, says : " In view of the situation at the location in question, the defendant had organized a system with the view to the operation, with reasonable dispatch and safety, of this portion of its road. It had made rules for that purpose, of which the plaintiff was advised, and had employed men to conduct that system. * * * There is no question about the sufficiency of these rules and their reasonable application to the situation. The telegraph operator was charged with important duties at that point, as upon him was imposed the duty of controlling and directing the movement of trains there. This was within the system which the rules provided for at that particular locality, and did not make him the *alter ego* of the defendant (*Slater* v. *Jewett, supra*); * * * he was a co-employee ; " and in that case a nonsuit was upheld.

In the case of *Rose* v. *The Boston and Albany Railroad Company* (58 N. Y., 217) where the fault or neglect complained of was that of a "head conductor," at Albany, whose duty it was made to prepare and dispatch certain trains, the General Term sustained a verdict for the plaintiff, but the Court of Appeals reversed the judgment and held that, upon the evidence, a nonsuit should have been granted. In that case the court said : " It does not appear whether he (the head conductor) was intrusted with any discretion

upon the subject of starting trains, or whether any regulations on the subject, either by a prescribed time table or otherwise, had been made by the company. But it is obvious that the company may have prescribed proper and safe rules in respect to the starting of these trains, and that those rules may have been disregarded by the persons who actually started these trains so near each other. It may be conceded that it is the duty of a railroad corporation to prescribe, either by means of time tables or by other suitable modes, regulations for running their trains with a view to their safety; but it is obvious that obedience to these regulations must be intrusted to employees having charge of the trains. Such obedience is matter of executive detail, which, in the nature of things, no corporation or any general agent of a corporation can personally oversee, and as to which employees must be relied upon." And it was held that the motion for a nonsuit should have been granted upon the precise ground that it did not appear that the defendant had been negligent of its duty to prescribe the necessary rules and regulations for the government of its servants. The case of *Sheehan* v. *The New York, etc., Railroad Company* (91 N. Y., 332), was submitted to the jury upon the precise question whether the defendant's rules and regulations for the dispatch of trains were reasonably adequate for the occasion then presented; and in the opinion of the Court of Appeals affirming a verdict for the plaintiff, DANFORTH, J., says: "No communication was sent to those persons (the conductor and engineer of one of the colliding trains); no rule of defendant required it." And in the case of *Dana*, growing out of the same accident (92 N. Y., 639), in which a verdict, directed for the defendant, was sustained at General Term, the Court of Appeals, after citing the case of *Slater* (*supra*), to the effect that a railroad company is bound to carry on its business under a proper system or regulation, says: "It does not appear from the record that the injury complained of was not immediately due to the defendant's omission of duty in this respect, and the trial court erred in taking the case from the jury."

In the case of *Sutherland* v. *The Troy and Boston Railroad Company* (11 N. Y. St. Rep., 841), which was an action by a servant of the defendant for an injury caused by the error or neglect of a train dispatcher, the General Term, in the third department, set aside

a, nonsuit on the ground, as stated by LANDON, J., that "it was a question of fact (for the jury) whether the methods adopted by the defendant were ample and explicit enough to bring, without the likelihood of mistake or miscarriage, the requisite notice to the servants most concerned, of the orders upon which their safety depended;" and the cases of *Sheehan* and *Dana* were cited as authority for the decision.

The case of *Slater* v. *Jewett* (*supra*) has been urged by counsel for the respondent here as authority for the proposition that every train dispatcher does, by virtue of his employment as such, stand absolutely in the place of the master, and by any negligence on his part charges the master with liability to a fellow servant for injuries resulting therefrom. It is true that it was said in the opinion in that case of a class of persons there denominated "train dispatchers," and who are also spoken of as "overlooking officers" of railroad companies, that they concededly stand in the place of the company itself; but no question of negligence of any person of that class arose in that case; whereas the eminent judge who wrote the opinion reached the conclusion and the court held that the telegraph operator, whose duty it was to receive and transmit or communicate orders for the movement of trains, and who, by whatever name he may be called, was, in fact, the immediate dispatcher of the trains in question, did not stand in place of the master, and that his negligence did not charge the defendant with liability to a fellow servant, because his fault consisted in the neglect or violation of sufficient rules prescribed for his government.

In the case of *Shiner* v. *Russell, Receiver, etc.* (6 N.Y. St. Rep., 78), the court, at General Term in the second department, says : "If, therefore, there were proper rules for the management of all the trains on the occasion in question, and the accident occurred through the negligence of any other employee in the execution of these proper rules, the plaintiff cannot recover."

In the case of *Ford* v. *The Lake Shore and Michigan Southern Railroad Company* (17 N. Y. St. Rep., 393), in the General Term of the Superior Court of Buffalo, BECKWITH, Ch. J., says : "The proofs tended to show that the defendant had never promulgated any rules or given any direction as to the manner of loading lumber, nor as to the kind of cars to be used in its transportation over its road. The importance and extent of the business of transporting lumber

would seem to require the adoption of some system on the part of the railroad companies having regard to the safety of their servants and others. But in this case the evidence was such as to allow a finding by the jury that the defendant left all that part of its duty to the foremen who superintended the loading of the lumber. These foremen, *therefore*, stood in the place of the defendant, and their acts were the acts of the defendant."

In *Anthony* v. *Leerett* (105 N. Y., 600) the defendant's appeal was sustained on the ground that the injury complained of resulted from the disobedience by a fellow servant, of instructions given by the master, which if obeyed would have prevented the accident. And in *Abel* v. *The Delaware and Hudson Canal Company* (103 N. Y., 581) the nonsuit was set aside on the ground that it was a question for the jury whether the instructions actually promulgated by the defendant were sufficient, if observed, to have prevented the accident.

We think it is the clear doctrine of these and many other cases of similar import that, in an action by a servant against the master, the negligence of a fellow servant of whatever grade, unless the duty neglected was one of those which the law imposes upon the master himself, is attributable to the master only where he has failed to prescribe adequate and proper rules and regulations for the government of the fellow servant in the performance of his duties; or, to vary the statement of the same conclusion, that the master will not be held liable to his servant for the disobedience by a fellow servant, whatever his duty (with the exception above noted), of rules and regulations properly prescribed by the master, which, if obeyed, would have prevented the injury complained of; and further, that where any questions exist as to the adequacy of the rules, or the sufficiency of their promulgation, that question is one for the jury.

If these conclusions are correctly drawn, it was error for the court in this case to direct a verdict for the plaintiff for such damages as the jury might assess.

The judgment and order appealed from should be reversed and a new trial granted.

BARKER, P. J., and MACOMBER, J., concurred.

Judgment and order reversed and a new trial granted, with costs to abide the event.