## WILLIAM T. McGINNIS, Appellant, v. HYDRAULIC PRESS BRICK COMPANY.

### Division Two, July 14, 1914.

1. **NEGLIGENCE: Master and Servant: Insurer of Safety.** An employer is not an insurer of the safety of an employee while on his premises. Nor is the conduct of the master's business to be subjected to the shifting rules of alleged safety arbitrarily devised and set up to fit the actionable necessities of of every casualty.

2. ————: ————: **Mud Scraper.** In front of defendant's office was a mud scraper, intended to be used by persons entering the building in scraping mud from their shoes. To a board ten inches wide, driven into the ground, was attached at the top with bolts a piece of sheet iron, which had been bent over until it was only about four inches above the pavement, and extending outwardly from the board about three inches. Plaintiff, an employee, who had been at the office only a few times in the course of four months, went to the office for instructions as to his work, and as he came down the steps and turned towards one of defendant's wagons his right foot caught under the projecting iron of the mud scraper, and he was thereby thrown to the ground, and his wrists badly injured. The time was 7:30 in the morning, early in October, and the day was bright. He did not see the scraper, nor did he look for it. *Held*, that he was guilty of contributory negligence, as a matter of law, and cannot recover damages.

3. ————: ————: ————: **Rule of Care.** The same rule of care applies to an employee who goes to his master's office for instructions about his work as would apply if he were actually at work there. All the duties the master owes him while on the premises attach at the moment of his injury; and that duty is to provide him a reasonably safe way of ingress and egress; and it is likewise the reciprocal duty of the servant to use his senses to see an appliance plainly in sight which the master had the right to install; and if, in broad daylight, he fails to see a permanent appliance, in plain view, located where the master had a right to place it, he is guilty of contributory negligence.

Appeal from St. Louis City Circuit Court.—*Hon. Leo S. Rassieur*, Judge.

AFFIRMED.

*Kinealy & Kinealy* for appellant.

(1) The mud scraper, by reason of its character, location and condition, was an obstruction dangerous to persons leaving defendant's building, and the duty of the master to exercise ordinary care to furnish his servant a reasonably safe place to work extends to exits and ingresses and to all places where he properly resorts on the premises in connection with his employment. Schumacher v. Breweries Co., 247 Mo. 141; Strobel v. Manufacturing Co., 148 Mo. App. 22; Dressers on Employers' Liability, sec. 13, pp. 75-6; 4 Labatt's Master & Servant, sec. 1558, note 2; Alexander v. St. Joseph, 170 Mo. App. 376. (2) Plaintiff did not know of the obstruction, but even if he did he could not be held guilty of contributory negligence as a matter of law merely because his foot caught under the bent-over scraper. Graney v. St. Louis, 141 Mo. 180; O'Donnell v. Hammond, 144 Mo. App. 155. (3) A peremptory instruction such as was given in this case is never proper where the facts are in dispute or where the facts being undisputed, they are such as to be susceptible of two inferences, one consistent with ordinary care and the other tending to show negligence, thus leaving ground for difference between fair-minded men as to whether or not negligence or contributory negligence exists. Clubb v. Scullin, 235 Mo. 585; Williamson v. Transit Co., 202 Mo. 345; Hegberg v. Railroad, 164 Mo. App. 514.

*Garner W. Penney* and *Percy Werner* for respondent.

(1) The servant is chargeable with knowledge of all conditions surrounding his employment, and of risks created by these conditions, according as it may

reasonably be inferred that those conditions or those risks would have been comprehended by a person of ordinary prudence whose mental and physical capacities, both natural and acquired, and opportunities for observing the facts indicative of danger, were the same. 1 Labatt's Master & Servant, sec. 391, p. 1028. If the risk is such as to be perfectly obvious to the sense of any man, whether master or servant, then even in the case of defective machinery, the servant assumes the risk. Keegan v. Kavanaugh, 63 Mo. 230; Soller v. Shoe Co., 130 Mo. App. 721; Jones v. Cooperage Co., 134 Mo. App. 330; Pohlman v. Car & Foundry Co., 123 Mo. App. 228. (2) Plaintiff, as servant of the defendant, was bound to inform himself as to his surroundings and is held, as a matter of law, to have known and accepted all the risks of the premises which were open and obvious to the sense of any man. (a) This has been applied to overhead dangers, as where a railroad brakeman ran into an overhead bridge, or a driver drove under a low gateway. Devitt v. Railroad, 50 Mo. 302; Baker v. Asphalt Pav. Co., 92 Fed. 117; Carroll v. Boston Coal Co., 81 N. E. 296. (b) The same is true as to dangers underfoot, such as risers between a hallway and a room. Ware v. Evangelical Baptist, etc., Assn., 63 N. E. 885. (3) There is no question for a jury here. No jury would have a right to set up a standard which would, in effect, dictate the customs of a community. The matter of what kind of mudscrapers, and where to place them, is a matter for the judgment and discretion and good taste of the owner of the premises. One jury might thoroughly approve of the arrangement; another disapprove. Juries might differ as might individuals. But that would not affect the right of the owner of the premises to use his own judgment and discretion. It is not pretended that the owner set a trap. Questions which are legitimately engineering or architectural questions cannot

be submitted to the jury as legal questions. Railroad v. Driscoll, 176 Ill. 334; Railroad v. Riley, 145 Fed. 137; Gilbert v. Railroad, 128 Fed. 531; Morris v. Railroad, 108 Fed. 748; Minnier v. Railroad, 167 Mo. 120; Boyd v. Harris, 176 Pa. 484; Marshall Field & Co. v. Leo Gosky, 133 Ill. App. 316; Larkin v. O'Neill, 119 N. Y. 221; McIntire v. White, 171 Mass. 170. The master is always presumed to have done his duty, and he is furthermore within the protection of the rule that "the extent of his legal · obligation is merely to provide instrumentalities that can be used without any abnormal danger by a servant who uses ordinary care." 1 Labatt, Master & Servant, p. 73; Wheat v. St. Louis, 179 Mo. 572; Coffey v. Carthage, 186 Mo. 585; Strutt v. Railroad, 18 App. Div. (N. Y.) 134. (4) The charge of negligence, that the mud scraper was allowed to become bent over, should be disregarded, because the stumbling over the mud guard · is itself a sufficient, certain and operating cause of the fall, and no other explanation is needed. Taylor v. Yonkers, 105 N. Y. 202; Wharton's Negligence, sec. 85.

FARIS, J.—Action for personal injuries, tried in the circuit court of the city of St. Louis. At the close of the plaintiff's evidence the court *nisi* instructed the jury that upon the proof adduced plaintiff was not entitled to recover. Thereupon plaintiff took an involuntary nonsuit with leave to move to set same aside. Thereafter, his motion to set aside this nonsuit being by the court overruled, he appealed.

The negligence pleaded is that which the courts, for convenience, have denominated common-law negligence as distinguished from negligence bottomed upon the violation of a statute or an ordinance. The injuries accrued to plaintiff from his having tripped upon a mud scraper, and having been thereby thrown with considerable violence to the brick pavement, sustaining in his fall injuries to the wrists of both hands.

McGinnis v. Press Brick Co.

This mud scraper was maintained outside of the entrance to the office of defendant. The specific elements of the negligence alleged by plaintiff and on which he bottoms his right to recover, are thus succinctly stated by him in his petition:

"1. In placing and maintaining the mud scraper, by which plaintiff was caused to fall, of the size and character and in the location above stated.

"2. In permitting the iron portion of said scraper to become bent over as stated and in permitting same to remain in that condition.

"3. In failing to furnish plaintiff a reasonably safe place to pass in and out of said building in the course of his employment, because of the presence of said mud scraper as then and there maintained by defendant."

The answer was (1) a general denial; (2) a plea of assumption of risk, and (3) contributory negligence of the plaintiff.

The *locus in quo* is graphically shown by the picture on the following page.

EXHIBIT NO. 2.

Plaintiff asked for $15,000 as damages; hence our jurisdiction. The salient substantive facts as shown by the evidence of the plaintiff (defendant, of course, put in none) are fairly set out by plaintiff, who, in fairness to himself, we permit to speak for himself; adopting as ours his statement of the facts, with minor emendations:

Defendant's office building was situated on defendant's premises on the west side of Kingshighway between the tracks of the Missouri Pacific and the Frisco railroads. Kingshighway ran north and south and at the time of the injury to plaintiff, October 7, 1910, a viaduct was being constructed along Kingshighway, across the railroad tracks, and in front of defendant's premises. The office building in question was of brick and the main line of it was eight feet west of and parallel with the west line of Kingshighway. In other words, the building sat eight feet back from the property line. In front of defendant's building all the way out to where the construction work was going on, about twenty-six feet, there was a uniform pavement of brick, without any curbing or breaks. This building was constructed with rooms on either side of a central hall. The entrance to the building was by three or four steps, and on either side of the approach to these steps there was a mud scraper, intended for use of persons entering the building in scraping the mud from their shoes. These mud scrapers, one upon the north and one upon the south of the entrance, were about seven feet apart and were about ten inches long and stood at right angles to the line of the lowest step and about two feet in front of, that is, east of it, and were entirely surrounded by the brick-paved space. Each scraper consisted of an oak plank ten inches wide by one and five-eighths inches thick inserted in the ground with its width running east and west, the eastern edge of the scraper being three feet, eight and one-half inches west of the wes-

tern line of Kingshighway. The top of the wooden post stood five inches above the ground and to this post there was bolted a piece of sheet iron ten inches long and three-sixteenths of an inch thick, which stood, when in its upright position, about two and one-fourth inches above the wood. For some two weeks or more prior to the 7th of October, 1910, the iron portion of the northernmost scraper had been bent down towards the south so that it stood horizontally about four inches above the pavement and extending three-eighths inches southwardly from the wooden post to which it was fastened. Plaintiff was an employee of the defendant, whose duties, amongst other things, it was to go to different localities in the city where defendant was delivering brick for paving purposes and to there receipt for the brick as it was delivered by the wagons. On the day before his injury, he had been receiving brick at a locality on Penrose street, and had been instructed by his immediate superior to call up the office to ascertain what job he was to go to the next day. This the plaintiff tried to do, but did not succeed in getting connection with the office by 'phone, and so on the next morning, having plenty of time, he went down to the office building in question to see Mr. Pleasant, the shipping clerk, from whom he was to receive the instructions as to where to go to work. This was a new building, about four or five months old, and Mr. McGinnis had been in it about three or four times prior to the occasion in question. He went into the building about seven o'clock in the morning and got his instructions from Mr. Pleasant and then went out of the building to go to the locality where he was to work. As he came out the door at about 7:30 o'clock, on what plaintiff says he "supposes was a bright morning, maybe a little cloudy," he noticed that between the building and a hole in the street where the viaduct work was going on, a distance of about twenty-six feet, a wagon was standing from which lumber was being

unloaded, and driving north just in front of the building and within about two feet and a half of the lowest step was one of defendant's loaded brick wagons. Mr. McGinnis's destination from the building was toward the north along Kingshighway, and as he came out of the building and down the steps he saw that there was room for him to pass between the steps and the wagon driving north, but as he started northwardly his right foot caught under the horizontally projecting iron portion of the northernmost mud scraper, causing him to fall forward to the street, whereby his wrists were badly hurt and he suffered the injuries for which he here sues. He was unable to arise, but was helped up by some men who saw him fall, and was sent by defendant to a doctor and thence to his home. As stated, plaintiff had been in this building three or four times before, but had not, he swears, noticed these mud scrapers. One witness testified that about two weeks before the plaintiff's injury witness had heard defendant's superintendent tell one of its employees to straighten up this bent-over mud scraper.

The sole point to be ruled is the correctness of the trial court's action in instructing the jury to find for defendant at the close of plaintiff's evidence. In other words, upon the facts shown, should the case have gone to the jury? If a case was made by plaintiff, we should reverse; if not, we must affirm.

**Negligence: Master and Servant: Demurrer to Evidence.**

Plaintiff had been employed by defendant some several years. But the office building of defendant had been in use by it only some four or five months prior to the casualty by which plaintiff was injured. He had been in this building only some two or three or four times before this—he tells us he does not remember definitely the number of times. He was hurt about 7:30 o'clock in the morning, in the early part of October, in broad daylight, and on a bright day,

plaintiff "supposes, though it may have been a little cloudy;" of this he is not sure.

The mud scraper which caused plaintiff's hurt was ten inches long, eight and one-half inches high originally, but bent down to five inches when plaintiff was hurt. It was on a board set into the brick pavement, with which this part of defendant's premises was paved. This board was originally one and five-eighths inches thick, but since the iron scraping part was bent down, the whole scraper when plaintiff got his hurt, looked at from above, was nearly five inches wide on top. It was placed on the premises of defendant, inferably as an appliance of cleanliness. To be of use in the intended behalf, it must then needs be about, or near, the entrance to defendant's office; a foot or mud scraper for the feet of entrants to the office would obviously subserve no scintilla of its intended office if located at a window, or in the rear yard, or upon the fire escape.

Obviously, regard being had to the testimony of plaintiff, that he never saw either of the mud scrapers till he tripped and fell over the north one, it can make no difference whether the iron part of this scraper was bent down or not. Its condition in this behalf had nothing to do with the injury to plaintiff, so far as the finite mind can see. If he had known it was there, from having theretofore observed it and so knowing its location assumed its being in repair, and had, so assuming, been injured from its being out of repair, there would be something in this contention. As the facts are we drop out of our discussion the physical condition of disrepair of the scraper, and come to look to the only remaining debatably tenable contention that the maintenance of it at all, in the place it was set, was a negligent act.

It is said in 3 Labatt's Master and Servant, sec. 935, that: "An employer has a right to arrange his

own premises in any way which suits his convenience.'' [Anthony v. Leeret, 105 N. Y. 591.]

It is reasonably plain that any other rule would in actual practice have the effect of making an employer an insurer of the safety of an employee. This for the reason, that the conduct of the master's business would otherwise be subjected to shifting rules of alleged safety arbitrarily devised and set up to fit the actionable necessities of every casualty and such shifting, arbitrary methods, however incongruous, would be urged as being the only safe method and only sane way of arranging and conducting the master's business.

We do not understand counsel for defendant to contravene the rule contended for by plaintiff that the same rule of law applied to plaintiff in going to and returning from the premises of defendant as protected him while on such premises and just as if plaintiff had actually been engaged there at work. Upon the facts before us no other view is tenable. All the duties which the master owed to plaintiff while the latter was upon the premises attached at the moment plaintiff was injured. [Jackson v. Butler, 249 Mo. 342; Lewis v. Railroad, 59 Mo. 495; Porter v. Railroad, 71 Mo. 66; Huhn v. Railroad, 92 Mo. 440; Alcorn v. Railroad, 108 Mo. 81; Williams v. Railroad, 119 Mo. 316.] At this precise moment it was incumbent on the defendant to furnish to plaintiff, who was on the premises in the line of duty, a reasonably safe way of ingress and egress. Reciprocally it was the duty of appellant to use his senses as to an appliance plainly in sight, which appliance respondent had the right to install and touching which, as we have seen, no duty lay upon the master to place at any location other than that which was convenient to, and suited the master.

We think upon the facts here the plaintiff was guilty of contributory negligence as a matter of law in failing to see in the light he had and under the

circumstances here, the mud scraper by which he was injured. For it was the duty of the plaintiff himself to exercise ordinary care for his own safety; to use his eyes, which he says were reasonably good, and to avoid running into permanent. erections and appliances, plainly visible and open, upon his employer's premises.

It is true that plaintiff denies absolutely that he ever saw the scrapers, or either of them until he was hurt. But does it materially aid his case that in broad daylight, in an open and otherwise clear space, he failed to observe a fixed and permanent appliance, which was in plain view and was practically as big in bulk and presented to the vision an, object as large as one of the volumes of the Revised Statutes? We think not. Negligence, and likewise contributory negligence, may and oftentimes does, consist as well in failing to know as in failing to do. For says Labatt: "The juridical theory of imputed knowledge, which is applied in actions by a servant against his employer, is simply this: that he is or is not chargeable with a comprehension of the conditions which caused his injury and of the risks created by those conditions, according as it may reasonably be inferred that those conditions or those risks would or would not have been comprehended by a person of ordinary prudence, whose mental and physical capacities, both natural and acquired, and opportunities for observing the facts indicative of danger, were the same as those of the servant himself." [4 Labatt's M. & S., sec. 1310; Porter v. Hannibal & St. Joe Railroad Co., 71 Mo. l. c. 77; Hollenbeck v. Railroad, 141 Mo. 97; Nicholds v. Plate Glass Co., 126 Mo. l. c. 64.]

In the case of Porter v. Railroad, supra, at page 77, it was said:

"If, however, the defect is patent, open to observation, or such as the ordinary use of the machine in the business the servant is engaged in would disclose

to an ordinarily observant man operating it, and the servant had ample opportunity, by operating it, before being injured, to observe the defect, his opportunity to know would be held as knowledge, whether in fact he knew of the defect or not. [Keegan v. Kavanaugh, 62 Mo. 230; Hulett v. St. L., K. C. & N. Ry. Co., 67 Mo. 239.]''

Commenting upon the entire trend and scope of the hundreds of cases cited by him on this point, the above distinguished author says:

''It will be seen that the general effect of these cases is that an adult servant of ordinary intelligence is presumed to have been capable of ascertaining every fact which could have been apprehended by the senses of a person having the same opportunities as he had for exercising those senses in relation to the dangerous conditions which caused the injury.'' [4 Labatt's Master & Servant, sec. 1313, and numerous cases cited.]

No case holding to the contrary has been called to our attention. The cases of Alexander v. St. Joseph, 170 Mo. App. 376; Graney v. St. Louis, 141 Mo. 180, and O'Donnell v. Hannibal, 144 Mo. App. 155, are all sidewalk cases, wherein injuries occurred to pedestrians upon public streets and sidewalks. We need scarcely pause to say that there is a difference between the actual degree of care reciprocally enjoined by law upon a city as to its sidewalks and pedestrians thereon, as compared to that required of a master and his servants while the latter are at work upon the master's premises. In the former case there is an implied assurance that the sidewalks are clear and unencumbered and reasonably safe and free from dangerous obstructions, and reasonably safe for the use of pedestrians, for which use alone they are maintained; while on the other hand obviously, no business could ordinarily be carried on, for neither machinery, machines, materials and appliances could be installed or used upon the master's premises, if an assurance

of absolute freedom from obstructions and smoothness of way were warranted to the servant by the master. Such cases are not so in point here as to be decisive, however much in point upon a different state of facts, and however similarly we may loosely define generally the degrees of care respectively enjoined.

The case of Strobel v. Mfg. Co., 148 Mo. App. 22, cited by appellant, while superficially seeming to be controlling as to the facts, is yet not so. For the reason, that in the Strobel case, supra, the obstruction was abnormal or unusual, was in a dark passageway used by the employees as a means of exit, and was composed of material loosely and carelessly, but temporarily, piled therein. It was an obstruction which lacked the feature of permanence; it was therefore abnormal, i. e., "not conforming to system" (Webster's Dictionary), and rendered the passageway dangerous beyond the ordinary at the time of the injury to Strobel, and an injury occurring therefrom was therefore actionable.

It results from what has been said that the judgment should be affirmed. Let this be done.

*Walker, P. J.*, and *Brown, J.*, concur.